Samuel Kahn and Emanuel Kahn v. Claud Hamilton et al.

2   115
2    37
2   121

## SAMUEL KAHN AND EMANUEL KAHN, RESPONDENTS, v. CLAUD HAMILTON ET AL., APPELLANTS.

1. POWER OF TRUSTEES.—The authority of trustees of an express trust is limited to the terms and purposes of the trust.

2. EXCESS OF AUTHORITY.—Trustees under a trust deed, with power of sale to pay certain debts, have no authority to apply the proceeds to the payment of other debts, or to even charge such trust with other debts.

3. EXCESS OF AUTHORITY.—A corporation executed a trust deed of its property to secure the payment of its debentures, appointing two trustees with power to enforce the security by sale of the property and payment of such debts to the holders of its debentures. Subsequently the corporation became largely involved in debt, to retire which a further arrangement was made, by which certain individuals, on invitation of the corporation, raised a fund of $30,000 and put the same into the hands of trustees with directions to buy up such subsequent debts of the corporation on the best terms they could obtain and hold them for the use of the contributors until the corporation should be able to execute second debenture and second trust deed to secure the same, when the latter trustees were to surrender such debts to the corporation, and remit such second debenture and deliver the same to the contributors. The trustees in both cases were the same persons. *Held*, That the first mentioned trust could not be charged by the trustees by such subsequent debts, and that an agent appointed by them to represent the trustees in their two distinct fiduciary capacities under two separate powers of attorney, had no authority as an agent of the trustees under the first named trust to charge such trust by giving a promissory note of such trustees in payment of such subsequent debts; nor had he any authority to bind the trustees of the second trust by giving such promissory note, as their trust embraced only the fund subscribed, and no authority existed in or could be conferred by the trustees to make any valid contract for the payment of an additional sum.

Appeal from the Third Judicial District Court.

The facts are stated in the opinion.

*Rosborough & Merritt* and *J. G. Sutherland*, for appellants.

The defendants are not suable at law, and a court of law has not jurisdiction of the subject matter.

Samuel Kahn and Emanuel Kahn v. Claud Hamilton et al.

The defendants are sued as trustees, and the pleadings and evidence disclose the precise nature of their trust; it is correctly described in the answer.

The action is a suit at law, not in equity, and is brought on promises alleged to be binding on the defendants in their fiduciary capacity.

A judgment was rendered against the defendants as trustees for $11,644.71 in the ordinary form of a money judgment, and which, of course, could only be enforced by the ordinary execution.

If this judgment stands, and is executed by the only mode provided by law, on execution, it may be made the means of divesting the defendants of their title and estate as such trustees, and transferring it to a purchaser. That is all the interest or estate that the trustees themselves could convey, except in the execution of their trust. And that is all that the Marshal could convey by sale under this judgment. *Eaton* v. *Whiting*, 3 Pick. 484; *Smith* v. *Provin*, 4 Allen, 516; *Martin* v. *Mowlen*, 2 Burr. 969; *Jackson* v. *Willard*, 4 John. 41; *Smith* v. *People's Bank*, 24 Me. 185; *Commrs.* v. *Warren*, 34 Me. 89; *Kortright* v. *Cady*, 21 N. Y. 343; See *Ashurst* v. *M. Iron Co.*, 35 Pa. St. 30.

A court of law has no power to remove such trustees, and even a court of equity would not, except for cause, and in a suit to which all the beneficiaries are made parties. *Wallace* v. *Eaton*, 5 How. Pr. R. 96, 103.

Whoever succeeds to the title of these defendants by a sale under this judgment, would hold it subject to the same trusts that it is subject to in these defendants. Such purchasers would necessarily buy with notice of such trusts, for the judgment is against the defendants as trustees, and the trusts are set out and declared in the conveyance of the trust property, which is real estate, to them. *Fisher* v. *Fields*, 10 John. 495; *Murray* v. *Ballou*, 1 John Ch. 566; *Sheppard* v. *McEven*, 4 John Ch. 136; *Brown* v. *Lynch*, 1 Paige, 147; *Le Neve* v.

*La Neve,* 1 Lead. Cases in Eq. pt. 1, 163; Tiff. & Ball on Trusts, 197; *Duncan* v. *Jouden,* 15 Wall. 165.

The trust follows the property, because any disposition of the trust property contrary to the trust is a fraud. *Ibid.*

A court of law cannot entertain a suit for the enforcement of a trust as such. There is no form of action adapted to it. Nor has the court the power to frame its judgments to secure a fair and complete adjustment of the unequal and diverse interests of the necessary parties. 1 Story's Eq. §§ 27, 28, 29; *Bishop* v. *Houghton,* 1 E. D. Smith, 566.

For this reason it has no power to bring in and retain the necessary parties. *Gardner* v. *Marshall,* 9 Cal. 268; *Voorhis* v. *Child's Ex'rs,* 17 N. Y. 354.

To make the plaintiff's judgment a lien on the surplus after satisfying the objects of the defendants' trust, the corporation is a necessary party. To make such judgment operate to displace the claims of the beneficiaries expressly provided for, or in any manner to interfere with the application of the proceeds of the trust property to the debentures secured, such beneficiaries or debenture holders must have their day in court as parties. Story's Eq. Pl., § 207; *Malin* v. *Malin,* 2 John. 283.

The notes are signed by Cook in his own name, and there is no evidence on their face that any other person was intended to be bound, except that he signed one for and on behalf of the corporation, and the Clohecy notes were signed H. & E., " Trustees." The guarantees are void on their face, because they do not purport to be founded on any consideration.

The finding that said notes and guarantees were for a good and sufficient consideration is not supported by proof, and is besides immaterial. No consideration could have effect to establish a contract which neither the agent nor the trustees had power to make. A consideration in such a case would be only a bribe to induce a violation of a trust.

The finding that the defendants ratified and confirmed the notes and guarantees with full knowledge, is unsupported by

proof, and was a legal impossibility. They had no power in their fiduciary capacity to make the notes or guarantees, for reasons already stated, and could not render them binding by ratification.

*John R. & T. R. McBride*, for respondents.

As trustees defendants take the legal title to the trust property, and it is plain that the grantors intended to convey the legal title, the grant being to them, their heirs, etc., thus creating not only a legal but a descendible estate. And an execution upon a judgment at law would certainly bind the legal estate. 8 East. 364, 265; Law of Trusts and Trustees, 824 to 838; 7 Ohio, 276; *Koch* v. *Briggs*, 14 Cal. 257; Law of Trusts and Trustees, 1 to 8.

That estate has all the incidents and properties that attends the estate of any beneficial owners of property. Law of Trusts and Trustees, 825.

Being then owners of the property they are liable at law for the notes given by them in the course of their management of it. *Cochrane* v. *Green*, 99 E. C. L., 446; *Wheatcroft & Cox* v. *Hickman*, 99 E. C. E., 45.

The objection that the grantors and debenture holders should have been made parties, is not one that can be raised upon this appeal, defendants having failed to plead the nonjoinder in the court below. Comp. Laws, §§ 1265, 1270.

EMERSON, J., delivered the opinion of the court.

The contracts sued on were not made by the defendants in person, but by one Charles W. Cook, as agent. He had no agency from them except as trustees, and hence to be binding on the defendants, these contracts must appear to have been made in the exercise of powers which the defendants, as trustees, were not only authorized to grant, but actually did confer.

They were clothed with two distinct trusts, and executed to Cook a separate power of attorney, to act for them in Utah in respect to each.

This first trust was under a trust deed from an English corporation, called the Mammoth Copperopolis of Utah (limited), securing debenture bonds held in England. The property embraced in that deed was mining property, situated in this Territory, which the company had owned and operated. The deed contained an express declaration of the trust, and particular directions how it should be executed, providing for taking possession in a certain event, an option to work the mine on certain terms, and upon default and request of debenture holders they were required to make a sale.

The corporation was largely indebted to various persons in Utah, and a second fund was proposed to be subscribed to be used for the purpose of retiring such debts. The loan so made was intended finally to be secured by new debenture bonds and a second mortgage.

When about $30,000 had been subscribed for this object by persons who were stockholders in the company and others, they constituted the defendants their trustees to administer it according to a precise plan, and Cook was appointed their agent to carry it out. He was sent to Utah with explicit instructions, the general purport of which was to negotiate with the Utah creditors, to whom the floating debt was owing, for the purchase of their debts, if they could be bought for a specified part of the subscribed sum. The money by this plan, and these instructions. was to be invested in these debts, as a present security to the subscribers, until the plan should be so far worked out that the other and ultimate security by a second series of debentures and a trust deed could be made.

Their agent paid out all the money in purchasing one secured debt on which the company's mine had been sold, in satisfying others unsecured, and in sundry expenses, and working the mine; and he made the promises sued on in respect to other debts, which the subscribed fund was not adequate to pay or purchase.

An examination of the powers of attorney satisfies us that all the operations of Cook in Utah, touching the local debts

of the company, must be attributed to the agency he assumed, and for a different line of conduct possessed for the defendants as trustees of the subscribed fund. He had no power whatever from the defendants as trustees of the debenture creditors to deal with the creditors of the company in Utah for any purpose. And as agent for the investment of the subscribed fund, he had no power or authority to make the contracts in question.

The trust only embraced the fund subscribed; and as trustees they could neither make, nor authorize to be made, any valid contract for the payment of an additional sum. Nor for any action in excess of Cook's or their own authority, under color of one power of attorney or trust, could the defendants be made liable in their other fiduciary capacity.

As this view disposes of the cases, it is not necessary to consider the other questions which were discussed.

Judgment reversed, with costs.

BOREMAN, J., concurs.

NOTE.—See the case of Mathews *v.* Hamilton, *ante*, and the case of Wolf *v.* Hamilton, *post. Reporter.*

SCHAEFFER, C. J., delivered the following dissenting opinion:

I cannot concur with the majority of the court in the conclusion arrived at. It appears from the evidence that the defendants were the president and directors of the Mammoth Copperopolis Mining Company of Utah (limited), and trustees of the first debenture holders, and also trustees of a fund called the second debenture fund and of a fund raised to redeem the property of the company from a marshal's sale to one Wadsworth, as agent of Wells, Fargo & Co. The witness, Cook, represented the defendants in all these, and had powers of attorney from them authorizing him to act for them in each of these four relations. He came to Utah and contracted the debts sued on, and there is no evidence that he contracted with plaintiffs in reference to any particular fund that he or his donors represented. His acts

were afterwards ratified by the defendants without specifying in what capacity the ratification was made, except that they should not be personally liable. I think, therefore, that the defendants are liable beyond doubt, and that the plaintiffs can elect in what capacity their liability exists; and if the defendants have, in this matter, exceeded their authority as trustees of any special fund or trust, the *cestui que trusts* must look to the defendants for redress; and the plaintiffs should not suffer, as it appears that they acted in good faith.

For the same reasons I cannot concur in the judgments in the cases of James E. Matthews and Isaac Woolf *versus* the same defendants, with this additional reason in the Matthews case, that the debts were created directly for work done for the defendants as trustees of the first debenture holders.